UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:  Seroquel Products Liability Litigation,
MDL DOCKET NO. 1769

JURY TRIAL DEMANDED

This document relates to:

*Mary Hunter Crooks Hall v. AstraZeneca Pharmaceuticals, LP, et al.*,
No. 6:08-cv-02095-ACC-DAB
_____/

**ASTRAZENECA PHARMACEUTICALS LP'S ANSWER AND DEFENSES TO
PLAINTIFF'S ORIGINAL COMPLAINT**

Defendant AstraZeneca Pharmaceuticals LP, erroneously named herein as

"AstraZeneca Pharmaceuticals, LP," (hereinafter "AstraZeneca") answers Plaintiff's Original

Complaint ("Complaint") as follows:

This Answer is filed on behalf of AstraZeneca Pharmaceuticals LP only, and

AstraZeneca makes no response on behalf of other entities.  More specifically, AstraZeneca

makes no response to the allegations of Plaintiff's Complaint on behalf of AstraZeneca AB,

AstraZeneca plc, and AstraZeneca UK Limited.

**RESPONSE TO "I.  INTRODUCTION"**

1.      COMES NOW, Plaintiff, MARY HUNTER CROOKS HALL, complaining of
ASTRAZENECA PHARMACEUTICALS, LP, ASTRAZENECA, AB,
ASTRAZENICA, PLC and ASTRAZENECA, UK LIMITED ("AstraZeneca" or
"Defendants") and for cause of action would respectfully show unto the Court and the
Jury the following:

**ANSWER:**  Paragraph 1 of the Complaint is not an allegation and therefore no responsive

pleading is required.  Should a response be deemed required, AstraZeneca denies each and every

allegation contained in said paragraph.

## RESPONSE TO "II.  JURISDICTION AND VENUE"

2.      The Court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(1) as the amount in controversy exceeds $75,000, excluding interest and costs.  Venue is proper in this Court pursuant to the July 6, 2006, Transfer Order of the Judicial Panel on Multidistrict Litigation, under 28 U.S.C. §1391 (a)(1) because all Defendants "reside" in this judicial district as that term is defined in 28 U.S.C. §1391(c), under 28 U.S.C. §1391(a)(2) in that a substantial part of the events or omissions giving rise to these claims arose in this judicial district, and/or, under 28 U.S.C. §1391(a)(3) because there is no district in which the action may otherwise be brought and at least one Defendant is subject to personal jurisdiction in this district.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 2 state legal conclusions to which no response is required.  To the extent that such allegations are construed as factual allegations, AstraZeneca admits that transfer of this action to MDL Proceeding No. 1769, titled *In re Seroquel Products Liability Litigation*, which was established on July 6, 2006 by the Judicial Panel on Multidistrict Litigation and coordinated for consolidated pretrial proceedings in the U.S. District Court for the Middle District of Florida, is proper.  AstraZeneca further admits that the amount in controversy exceeds $75,000.00 exclusive of interest and costs.  To the extent that any remaining allegations of paragraph 2 are construed as factual allegations, AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of such allegations, and therefore denies same.

## RESPONSE TO "III.  PARTIES"

3.      Plaintiff is an individual who ingested Seroquel, suffered injuries as a result thereof and currently resides in, and is a citizen of a state in the United States.

**ANSWER:**  AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3, and therefore denies same.

4.      Defendant, AstraZeneca Pharmaceuticals LP, is a Delaware limited partnership doing business in the State of Delaware, and the United States.  AstraZeneca Pharmaceuticals LP, is the United States Subsidiary of AstraZeneca PLC, and was created as a result of the union of Zeneca Pharmaceuticals and Astra Pharmaceuticals LP in the United States after the 1999 merger.  AstraZeneca Pharmaceuticals LP's principal place of business is in Delaware, 1800 Concord Pike, PO Box 15437, Wilmington, DE 19850.  Upon

Information and belief, AstraZeneca Pharmaceuticals LP's general and limited partners are: AstraZeneca AB, a Swedish corporation with its principal place of business in Sweden; Zeneca Inc., a Delaware corporation with its principal place of business in Delaware.  Therefore, AstraZeneca Pharmaceuticals LP is a citizen of Delaware and Sweden.

**ANSWER:**  AstraZeneca admits that AstraZeneca Pharmaceuticals LP is a Delaware limited partnership with its principal place of business in Delaware at the following address: 1800 Concord Pike, Wilmington, DE 19850.  AstraZeneca further admits that, pursuant to approval by the Food and Drug Administration ("FDA"), it distributes, markets, and sells SEROQUEL® for prescription by licensed physicians in the United States, including the state alleged.  AstraZeneca admits that AstraZeneca Pharmaceuticals LP is an indirect subsidiary of AstraZeneca plc, a United Kingdom public limited company headquartered in London, England, and that AstraZeneca plc was formed in 1999 as a result of the merger between Zeneca Group plc and Astra AB.  AstraZeneca states that AstraZeneca AB is the general partner of AstraZeneca Pharmaceuticals LP.  AstraZeneca further admits that AstraZeneca Pharmaceuticals LP's general and limited partners are: AstraZeneca AB, a Swedish corporation with its principal place of business in Sweden; Zeneca Inc., a Delaware corporation with its principal place of business in Delaware; Astra USA, Inc., a New York corporation with its principal place of business in Delaware; and Astra U.S. Holdings Corporation, a Delaware corporation with its principal place of business in Delaware.  AstraZeneca states that the allegations of paragraph 4 regarding the citizenship of AstraZeneca Pharmaceuticals LP state legal conclusions to which no response is required.  To the extent that such allegations are construed as factual allegations directed to AstraZeneca, AstraZeneca states that, for the purposes of diversity, AstraZeneca Pharmaceuticals LP is a citizen of Delaware, New York, and Sweden.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 4.

5.      Defendant, AstraZeneca LP, is a Delaware limited partnership doing business in the State of Delaware and the United States.  AstraZeneca LP's principal place of business is in Delaware.  Upon information and belief, AstraZeneca LP's general partner is AstraZeneca Pharmaceuticals LP, which as stated above is a citizen of Delaware, New York, and Sweden.  AstraZeneca LF's sale limited partner, KBT Sub Inc., is incorporated in the state of Delaware and its principal place of business is in New Jersey.  Therefore, AstraZeneca LP is a citizen of Delaware, New York, New Jersey and Sweden.

**ANSWER:**  AstraZeneca admits that AstraZeneca LP is a Delaware limited partnership with its

principal place of business in Delaware at the following address: 1800 Concord Pike,

Wilmington, DE 19850.  AstraZeneca further admits that, pursuant to approval by the FDA, it

distributes, markets, and sells SEROQUEL® for prescription by licensed physicians in the

United States, including the state alleged.  AstraZeneca admits that AstraZeneca LP's general

partner is AstraZeneca Pharmaceuticals LP.  AstraZeneca states that the allegations of paragraph

5 regarding the citizenship of AstraZeneca Pharmaceuticals LP state legal conclusions to which

no response is required.  To the extent that such allegations are construed as factual allegations

directed to AstraZeneca, AstraZeneca states that, for the purposes of diversity, AstraZeneca

Pharmaceuticals LP is a citizen of Delaware, New York, and Sweden.  AstraZeneca further

admits that KBI Sub Inc., a Delaware corporation with its principal place of business in New

Jersey, is the sole limited partner of AstraZeneca LP.  AstraZeneca states that the allegations of

paragraph 5 regarding the citizenship of AstraZeneca LP state legal conclusions to which no

response is required.  To the extent that such allegations are construed as factual allegations

directed to AstraZeneca, AstraZeneca states that, for the purposes of diversity, AstraZeneca LP is

a citizen of Delaware, New Jersey, New York, and Sweden.  AstraZeneca denies that

AstraZeneca LP is named as a defendant in this action.  AstraZeneca denies any remaining or

inconsistent allegations of paragraph 5.

6.      Defendant AstraZeneca AB, is the general partner of AstraZeneca Pharmaceuticals LP, and is a foreign company with its principal place of business at SE-151 85, Södertälje, Sweden.  Lacking an agreed appearance, this Defendant may be served with process

pursuant to Articles 10(a) and 15 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

**ANSWER:** AstraZeneca admits that AstraZeneca AB is a Swedish corporation with its

principal place of business located at SE-151 85, Södertälje, Sweden.  AstraZeneca further

admits that AstraZeneca AB is the general partner of AstraZeneca Pharmaceuticals LP.

AstraZeneca states that the allegations of paragraph 6 regarding service on AstraZeneca AB state

legal conclusions to which no response is required.  To the extent that such allegations are

construed as factual allegations, AstraZeneca lacks knowledge or information sufficient to form

a belief as to the truth of such allegations, and therefore denies same.  AstraZeneca denies that

AstraZeneca AB is a proper defendant in this action.  AstraZeneca denies any remaining or

inconsistent allegations of paragraph 6.

7.      Defendant AstraZeneca PLC, is the ultimate parent company of all Defendants, and is a
        foreign company with its principal place of business at 15 Stanhope Gate, London, W1K
        1LN, England, United Kingdom.  Lacking an agreed appearance, this Defendant may be
        served with process pursuant to Articles 10(a) and 15 of the Hague Convention on the
        Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

**ANSWER:** AstraZeneca admits that AstraZeneca plc is a corporation organized under the laws

of the United Kingdom with its principal place of business at 15 Stanhope Gate, London, W1K

1LN, England, United Kingdom.  AstraZeneca admits that AstraZeneca plc is the ultimate parent

company of AstraZeneca Pharmaceuticals LP.  AstraZeneca states that the allegations of

paragraph 7 regarding service on AstraZeneca plc state legal conclusions to which no response is

required.  To the extent that such allegations are construed as factual allegations, AstraZeneca

lacks knowledge or information sufficient to form a belief as to the truth of such allegations, and

therefore denies same.  AstraZeneca denies any remaining or inconsistent allegations of

paragraph 7.

8.      Defendant AstraZeneca UK Limited is a company incorporated under the laws of
        England and Wales and has a registered office in London, England.  Defendant

AstraZeneca UK Limited is the holder of the New Drug Application by which the U.S. Food and Drug Administration first granted approval for Seroquel.  Lacking an agreed appearance, this Defendant may be served with process pursuant to Articles 10(a) and 15 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

**ANSWER:**  AstraZeneca admits that AstraZeneca UK Limited is organized under the laws of England.  AstraZeneca further admits that Zeneca Limited sponsored the original New Drug Application for SEROQUEL®.  AstraZeneca states that the allegations of paragraph 8 regarding service on AstraZeneca UK Limited state legal conclusions to which no response is required.  To the extent that such allegations are construed as factual allegations, AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of such allegations, and therefore denies same.  AstraZeneca denies that AstraZeneca UK Limited is a proper defendant in this action.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 8.

9.      AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB, AstraZeneca PLC and AstraZeneca UK Limited shall be collectively referred to as "AstraZeneca" or the "Seroquel Defendants."  At all times relevant herein, the Seroquel Defendants were in the business of designing, testing, monitoring, manufacturing, labeling, advertising, marketing, promoting, selling, and distributing pharmaceuticals, including Seroquel, for use by the mainstream public, including Plaintiff.

**ANSWER:**  AstraZeneca admits that Plaintiff purports to refer to all named Defendants collectively as "AstraZeneca" or the "Seroquel Defendants," but denies that the defendants in this action may be properly referred to collectively and states that this Answer is filed on behalf of AstraZeneca Pharmaceuticals LP only.  AstraZeneca further admits that, pursuant to approval by the FDA, it tests, monitors, manufactures, labels, advertises, markets, promotes, sells, and distributes SEROQUEL® for prescription by licensed physicians in the United States.  AstraZeneca denies that it sells prescription medications directly to the "mainstream public, including Plaintiff."  AstraZeneca denies any remaining or inconsistent allegations of paragraph 9.

## RESPONSE TO "IV. FACTUAL BACKGROUND"

10.     Seroquel (chemically referred to by its active ingredient, quetiapine fumarate) is among a group of drugs known as "atypical antipsychotics" or "second generation antipsychotics." Seroquel was initially approved in September 1997 by the U.S. Food and Drug Administration (hereinafter the "FDA"). Both first and second generation antipsychotics are often referred to as *neuroleptic drugs* as they are believed to produce a sedating or tranquilizing effect, decreased delusions, hallucinations and psychomotor agitation. They are also sometimes referred to as *major tranquilizers*.

**ANSWER:** AstraZeneca admits that SEROQUEL® is an "antipsychotic" medication and belongs to a class of drugs referred to as "atypical antipsychotics." AstraZeneca admits that SEROQUEL® (quetiapine fumarate) was approved by the FDA on September 26, 1997. AstraZeneca further states that the remaining allegations are conclusory, vague, and ambiguous, and therefore AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of those allegations and denies same. AstraZeneca further states that the allegations of paragraph 10 do not fully and accurately describe the state of medical and scientific understanding with respect to the pharmacodynamics of SEROQUEL®, and therefore denies Plaintiff's allegations pertaining to same. AstraZeneca denies any remaining or inconsistent allegations of paragraph 10.

11.     Other second-generation antipsychotics include:

- clozapine (Clozaril) - Novartis - approved 9/89;
- risperidone (Risperdal) - Janssen- approved 12/93;
- olanzapine (Zyprexa) - Eli Lilly - approved 9/96;
- ziprasidone (Geodon) - Pfizer - approved 2/01; and
- aripiprazole (Abilify) - Ortho McNeil - approved 11/02.

Accordingly, Seroquel was at least the fourth "me too," "copy cat" atypical antipsychotic on the market.

**ANSWER:** AstraZeneca admits that SEROQUEL® is an atypical antipsychotic, as are the other medications identified in paragraph 11, but denies that said medications have similar efficacy or safety profiles. AstraZeneca denies the remaining allegations of paragraph 11 directed to

AstraZeneca and specifically denies that SEROQUEL® was "at least the fourth 'me too,' 'copy cat' atypical antipsychotic on the market."  To the extent that the allegations of paragraph 11 are directed to medications other than SEROQUEL®, no response is required.  To the extent that such allegations are construed as factual allegations directed to AstraZeneca, AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of those allegations and therefore denies same.

12.      "First generation," "conventional" or "typical antipsychotics" (another subclass of neuroleptic drugs) include chlorpromazine (Thorazine), fluphenazine (Prolixin), haloperidol (Haldol, Halperon), mesoridazine (Serentil), perphenazine (Trilafon), thioridazine, and trifluoperazine (Stelazine).  They also produce significant extrapyramidal symptoms such as dystonic reactions, Parkinsonism, akathisia (restlessness and agitation), and tardive dyskinesia.  Further, they have been associated to a lesser degree than the second-generation drugs with the development of metabolic side effects like diabetes.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 12 are directed to medications other than SEROQUEL® and, therefore, AstraZeneca makes no response to same.  To the extent that such allegations are construed as factual allegations directed to AstraZeneca, AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of those allegations and therefore denies same.

13.      The initial indication for Seroquel approved by the FDA was solely for treatment of adults with schizophrenia, a relatively rare condition that affects less than one percent of the population of the United States.

**ANSWER:**  AstraZeneca states that SEROQUEL® was approved by the FDA on September 26, 1997, and is indicated for the treatment of schizophrenia in adults.  AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 13, and therefore denies same.

14.      The pharmacologic action of Seroquel is thought to be dependent on its ability to block or moderate the level of dopamine, a chemical found in the brain that in excessive amounts is believed to cause abnormal thinking and hallucinations.  Likewise, all neuroleptic drugs act as inhibitors of the dopamine-2 (D2) receptor.  First generation antipsychotics

bind tightly to the receptor to produce a prolonged duration of effect but also increased side effects.  Second generation antipsychotics, it was originally theorized, would bind more loosely producing fewer side effects.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 14 do not fully and accurately describe the state of medical and scientific understanding with respect to the pharmacodynamics of SEROQUEL®, and therefore denies Plaintiff's allegations pertaining to same.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 14.

15.    Medical literature dating back to the 1950s, demonstrated that conventional antipsychotics had the potential to cause diabetes, diabetes-related injuries (e.g. severe weight gain, hyperglycemia, diabetic ketoacidosis), pancreatitis, cardiovascular complications, and other severe adverse effects.  The medical reports describe cases of sudden onset hyperglycemia after the initiation of chlorpromazine treatment that resolved upon withdrawal of the drug.  Additionally, patients with existing diabetes had a notable worsening of symptoms with antipsychotic treatment. Hiles, BW, *Hyperglycemia and Glycosuria Following Chlorpromazine Therapy*. JAMA 1956; 162:1651.

**ANSWER:**  AstraZeneca admits that the allegations of paragraph 15 purport to refer to an article discussing conventional antipsychotic medications published in the *Journal of the American Medical Association* in 1956, and states that the content of any such article speaks for itself. AstraZeneca further states that the allegations of paragraph 15 do not fully and accurately describe the medical literature and evidence regarding conventional antipsychotic medications, and therefore denies Plaintiff's allegations pertaining to same.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 15.

16.    In another 1950's study, all patients were given a measured dose of glucose (assimilating the same amount of food intake); however, the group that was pretreated with a conventional antipsychotic (chlorpromazine) showed a markedly slower drop in blood sugar levels in three hours of blood tests thereafter.  Charatan, FBF, *The effect of Chlorpromazine ("Largactil") on Glucose Tolerance*, J. Ment. Sci. 1956; 101:351-3. Because of these studies and significant other medical evidence, since 1979 the National Diabetes Data Group has listed the use of conventional antipsychotics as a diabetic risk factor.  National Diabetes Data Group; *Classification and diagnosis of diabetes mellitus and other categories of glucose intolerance*.  Diabetes 1979; 28:1039-57.

**ANSWER:** AstraZeneca admits that the allegations of paragraph 16 purport to refer to articles discussing conventional antipsychotic medications published in the *Journal of Mental Science* in 1956, and in *Diabetes* in 1979, and states that the content of any such articles speaks for itself. AstraZeneca further states that the allegations of paragraph 16 do not fully and accurately describe the medical literature and evidence regarding conventional antipsychotic medications, and therefore denies Plaintiff's allegations pertaining to same.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 16.

17.     AstraZeneca's own pre-clinical studies regarding Seroquel confirmed the propensity of its atypical antipsychotic to cause diabetes and related life threatening and deadly conditions – just like conventional antipsychotics.

**ANSWER:** AstraZeneca admits that there have been reports of weight gain and hyperglycemia in people who were prescribed SEROQUEL®, but denies that SEROQUEL® causes diabetes. AstraZeneca denies any remaining or inconsistent allegations of paragraph 17.

18.     Shortly after AstraZeneca's September, 1997, approval and sales of Seroquel began, reports of U.S. consumers using Seroquel suffering from hyperglycemia, acute weight gain, diabetes mellitus, pancreatitis, and other severe diseases and conditions associated began to surface.  AstraZeneca knew or was reckless in not knowing of these reports.

**ANSWER:** AstraZeneca admits that, following the FDA's 1997 approval of SEROQUEL® and its subsequent release into the market, there were reports of diabetes in people with schizophrenia and other ailments who were treated with SEROQUEL®, but denies that SEROQUEL® causes diabetes or complications from diabetes.  AstraZeneca denies the remaining allegations of paragraph 18.

19.     Based on decades old confirmation of the association between conventional antipsychotics and diabetes and its lethal side effects, AstraZeneca, a manufacturer of an atypical antipsychotic, had every reason to be vigilant in identifying a signal and an association that atypicals would result in diabetes just like conventional antipsychotics. AstraZeneca was aware of studies and journal articles in 1998 and 1999 confirming the link between atypicals, new onset diabetes and permanent hyperglycemia-related adverse events.  Wirshing, DA, *Novel Antipsychotics and new onset diabetes*. Biol. Psychiatry, 1998:15;44:778-83; Allison, DB, *Antipsychotic-Induced Weight Gain: A Comprehensive*

10

*Research Synthesis*. Am. J. Psychiatry, 1989:156:1686-96.  Despite this knowledge, AstraZeneca never attempted to provide an adequate warning label - at least to Americans - until they were ultimately forced to do so by the FDA.

**ANSWER:**  AstraZeneca admits that, pursuant to FDA approval, it manufactures SEROQUEL®

for prescription by licensed physicians in the United States.  AstraZeneca further admits that the

allegations of paragraph 19 purport to refer to articles discussing antipsychotic medications

published in *Biological Psychiatry* in 1998, and in the *American Journal of Psychiatry* in 1989,

and states that the content of any such articles speaks for itself.  AstraZeneca denies the

remaining allegations of paragraph 19.

20.     Seroquel's worldwide sales in 1998, its first full year on the market, were a modest $63 million.  According to AstraZeneca's 2005 Annual Report, worldwide sales exceeded $2.76 billion.  Restated, sales increased 4,280% in seven years.

**ANSWER:**  AstraZeneca denies the annual sales allegations of paragraph 20 to the extent the

figures are inconsistent with those reported by AstraZeneca plc in its annual financial statements,

which reports are publicly available.  AstraZeneca denies any remaining or inconsistent

allegations of paragraph 20.

21.     Critical to this blockbuster success was AstraZeneca's aggressive marketing of Seroquel, which consisted chiefly of overstating the drug's uses and benefits (including massive off-label promotion), while understanding and consciously concealing it life-threatening side effects.  Seroquel, upon information and belief, was promoted, off-label for the treatment of depression, anxiety, childhood Tourette's Syndrome, autism, obsessive-compulsive disorder (OCD), alcoholism, treatment of tardive dyskinesia, treatment-resistant major depressive disorder, Parkinson's disease symptoms, and/or insomnia.  As a part of the aggressive marketing of Seroquel, sales representatives actively detailed and prompted the drugs to physicians, pharmacists, and other health care providers by understating, denying and or trivializing risks, overstating benefits, promoting indications outside of the label, and generally diluting the import of the label with aggressive promotion techniques to gain market shares.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 21.

22.     Shortly after Seroquel's product launch and first widespread usage, the number of adverse event reports involving diabetes-related illnesses associated with Seroquel, spiked.  These promotional efforts were made, while fraudulently, willfully and wantonly withholding important safety information from the physicians, the FDA, and the public.

Specifically, AstraZeneca was aware of numerous reports of diabetes associated with the use of these drugs, well beyond the background rate and well beyond the rate for other antipsychotic agents.

**ANSWER:**  AstraZeneca admits that, following the FDA's 1997 approval of SEROQUEL® and its subsequent release into the market, adverse event reports involving weight gain and hyperglycemia were filed with the FDA's MedWatch database.  AstraZeneca further admits that those adverse event reports are publicly available on the FDA's MedWatch database.  AstraZeneca denies that paragraph 22 accurately characterizes the type or number of adverse event reports filed with the MedWatch database.  To the extent that the allegations of paragraph 22 are inconsistent with the information contained on that database, they are denied.  AstraZeneca further denies all remaining allegations of paragraph 22.

23.     In December 2000, an article published in the *British Medical Journal* concluded that "[t]here is no clear evidence that [Risperdal or other atypical anti-psychotics like Seroquel] are more effective or are better tolerated than conventional antipsychotics [including Haldol and Thorazine]".  Geddes, J, et al., *Atypical antipsychotics in the treatment of schizophrenia systematic overview and meta-regression analysis*. Br. Med. J., 2002 321:1371-76.

**ANSWER:**  AstraZeneca states that, upon information and belief, an article comparing the use of typical and atypical antipsychotics in the treatment of schizophrenia was published in a December 2000 issue of the *British Medical Journal*, and further states that the article speaks for itself.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 23.

24.     By July 2001, Defendant AstraZeneca had received at least 46 reports of diabetes mellitus in patients taking Seroquel, including reports in the medical literature, and including at least 21 cases of ketoacidosis or acidosis and 11 deaths, and, by the end of 2003, AstraZeneca had received at least 23 more.  Most cases appeared within 6 months of initiating Seroquel therapy.

**ANSWER:**  AstraZeneca states that the phrase "reports" is vague and ambiguous.  Accordingly, AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 24, and therefore denies same.

25.     Upon information and belief, prior to and during the time most plaintiffs ingested
        Seroquel, the Japanese label for Seroquel provided a detailed warning regarding the risks
        of diabetes associated with Seroquel, and specifically informed physicians regarding the
        necessity of medical monitoring of patients on Seroquel.  At the time Plaintiff ingested
        Seroquel, Defendant AstraZeneca had not adopted this safer, more accurate label for the
        U.S. distribution of Seroquel.

**ANSWER:**  AstraZeneca states that, upon information and belief, Japan's Ministry of Health,

Labor, and Welfare has required language in the labeling of  SEROQUEL® in Japan relating to

diabetes and glucose monitoring, but denies that the Japanese labeling for SEROQUEL® is safer

or more accurate than the FDA-approved U.S. labeling for SEROQUEL®.  AstraZeneca denies

any remaining or inconsistent allegations of paragraph 25.

26.     Upon information and belief, prior to and during the time of use of Seroquel by most
        Plaintiffs, the Japanese label warning specifically of the diabetes risk, prominently in the
        beginning of the package label stating:

        a.      Quetiapine fumarate is contraindicated for use in patients with diabetes or a
                history of diabetes.

        b.      Quetiapine fumarate should be used with caution in patients with risk factors for
                diabetes, including hyperglycemia, obesity or a family history of diabetes.

        c.      Patients receiving quetiapine fumarate should be carefully monitored for
                symptoms of hyperglycemia, and the drug should be discontinued if such
                symptoms occur.  The symptoms of severe hyperglycemia include weakness,
                excessive eating, excessive thirst, and excessive urination.

        d.      Physicians should educate patients and their family members about the risk of
                serious hyperglycemia associated with quetiapine fumarate and how to identify
                the symptoms of hyperglycemia.  In April 2002, the Japanese Health & Welfare
                Ministry issued emergency safety information regarding the risk of diabetes,
                diabetic ketoacidosis, and hyperosmolar coma for patients prescribed Seroquel.
                On information and belief, prior to the time Defendant AstraZeneca was involved
                in discussing with the Japanese agency regarding labeling changes for Seroquel
                and other atypicals.

**ANSWER:**  AstraZeneca states that, upon information and belief, Japan's Ministry of Health,

Labor, and Welfare has required language in the labeling of SEROQUEL® in Japan relating to

diabetes and glucose monitoring, but denies that the allegations of paragraph 26 fully and

accurately state that warning.  AstraZeneca further denies that SEROQUEL® causes diabetes.

AstraZeneca denies any remaining or inconsistent allegations of paragraph 26 and its subparts.

27.     While warning of the association of Seroquel with diabetes, glucose dysregulation, ketoacidosis, weight gain, and the need for medical monitoring in Japan, AstraZeneca failed to provide the same or similar warnings to the public and prescribing physicians in the United States.

**ANSWER:**  AstraZeneca states, upon information and belief, that Japan's Ministry of Health,

Labor, and Welfare has required language in the labeling of SEROQUEL® in Japan relating to

diabetes and glucose monitoring, but denies that the Japanese labeling for SEROQUEL® is safer

or more accurate than the FDA-approved U.S. labeling for SEROQUEL®.  AstraZeneca denies

any remaining or inconsistent allegations of paragraph 27.

28.     In April 2002, the British Medicine Control Agency warned about the risk of diabetes for patients prescribed the atypical antipsychotic Zyprexa in its newsletter *Current Problems in Pharmacovigilance*.  This newsletter reported forty (40) reports of diabetes, hyperglycemia, diabetic ketoacidosis, diabetic coma, and one death among users of Zyprexa.  Subsequently, the British government required Lilly to warn consumers about the risk of diabetes and diabetic ketoacidosis, and further required Lilly to instruct patients who were using Zyprexa to monitor their blood sugar levels.  AstraZeneca knew or should have known that their dangerous side effects were common to all drugs of the class known as atypicals antipsychotics.

**ANSWER:**  To the extent that the allegations of paragraph 28 are directed to AstraZeneca, they

are denied.  To the extent that the allegations of paragraph 28 are directed to medications other

than SEROQUEL®, no response is required.  To the extent that such allegations are construed as

factual allegations directed to AstraZeneca, AstraZeneca lacks knowledge or information

sufficient to form a belief as to the truth of those allegations and therefore denies same.

29.     In September, 2002 a population of over 20,000 neuroleptic drug users from the U.K. General Practice Research database were followed (19,102 using atypical and 958,453 using conventional.) 424 cases of new onset diabetes were identified and matched to the 1,522 controls (about 4 per case) by age, gender, general practice, and index date.  The adjusted odds ratio for current use of any antipsychotics was 1.7 (95% CI = 1.3-2.3) and for current use of atypical antipsychotics was 4.7 (95% CI = 1.5-14.9). Kornegay CJ, Vasilakis-Scarmozza C, Jick H; *Incident Diabetes Associated with Antipsychotic use in*

14

*the United Kingdom General Practice Research Database*. J Clin Psychiatry 2002; 63:758-62.

**ANSWER:**  AstraZeneca admits that the allegations of paragraph 29 purport to refer to an article

discussing the "U.K. General Practice Research database" published in the *Journal of Clinical*

*Psychiatry* in 2002, and states that the content of any such article speaks for itself.  AstraZeneca

denies any remaining or inconsistent allegations of paragraph 29.

30.     On September 11, 2003, the FDA informed all manufacturers of atypical antipsychotic drugs, including AstraZeneca, that due to an increasing prevalence of diabetes-related illnesses associated with this class of drugs, all labeling must bear the following language in the Warnings section:

> Hyperglycemia, in some cases extreme and associated with ketoacidosis or hyperosmolar coma, or death, has been reported in patients treated with atypical antipsychotics.  Assessment of the relationship between atypical antipsychotic use and glucose abnormalities is complicated by the possibility of an increased background risk of diabetes mellitus in patients with schizophrenia and the increasing incidence of diabetes mellitus in the general population.  Given these confounders, the relationship between atypical antipsychotic use and hyperglycemia-related adverse events is not completely understood.  However, epidemiologic studies suggest an increased risk of treatment emergent hyperglycemia-related adverse events in patients treated with atypical antipsychotics.  Precise risk estimates for hyperglycemia-related adverse events in patients treated with atypical antipsychotics are not available.
>
> Patients with an established diagnosis of diabetes mellitus who are started on atypical antipsychotics should be monitored regularly for worsening of glucose control.  Patients with risk factors for diabetes mellitus (e.g., obesity, family history of diabetes) who are starting treatment with atypical antipsychotics should undergo fasting blood glucose testing at the beginning of treatment and periodically during treatment.  Any patient treated with atypical antipsychotics should be monitored for symptoms of hyperglycemia including polydipsia, polyuria, polyphagia, and weakness. Patients who develop symptoms of hyperglycemia during treatment with atypical antipsychotics should undergo fasting blood glucose testing.  In some cases, hyperglycemia has resolved when the atypical antipsychotic was discontinued; however, some patients required continuation of anti-diabetic treatment despite discontinuation of the suspect drug.

**ANSWER:**  AstraZeneca admits that it received a letter from the FDA dated September 11,

2003, directed to all manufacturers of atypical antipsychotics, which provided class labeling that

15

included warnings related to glucose dysregulation.  AstraZeneca denies that SEROQUEL®

causes diabetes.  AstraZeneca denies that paragraph 30 accurately quotes the class labeling or

accurately characterizes the FDA's letter of September 11, 2003.  AstraZeneca denies all

remaining or inconsistent allegations of paragraph 30.

33.     Despite the FDA action, AstraZeneca waited until January 30, 2004 to send out a "Dear
        Doctor" letter attempting to advise treating physicians of the new warnings.  On April 22,
        2004 AstraZeneca was forced to send out a revised "Dear Doctor" letter due to the fact
        that the first one was misleading, as it potentially downplayed the need to continually
        monitor a patient's blood sugar levels while on the drug.  This critical information did not
        make it into the *Physicians' Desk Reference* until the 2005 edition.

**ANSWER:**  AstraZeneca admits that it submitted a proposed Dear Health Care Provider Letter

to the FDA for review in the Fall of 2003, which, following approval by the FDA, was issued on

January 30, 2004.  AstraZeneca further admits that on April 22, 2004, it issued a second Dear

Health Care Provider letter, which included information inadvertently omitted from the January

30, 2004 letter.  AstraZeneca denies Plaintiff's characterization of the 2004 Dear Health Care

Provider letters and specifically denies that AstraZeneca was "forced" to issue a letter in April

2004 because "the first one was misleading."  AstraZeneca denies all remaining or inconsistent

allegations of paragraph 33.[1]

34.     Seroquel may be the least potent atypical antipsychotic – from an efficacy standpoint but
        not a risk standpoint – in the atypical subclass.  Seroquel likely requires more milligrams
        to be effective than more potent drugs like risperidone or ziprasidone.  Seroquel is
        available in 25mg, 100mg, 200mg, and 300mg dosages.  The total daily dose for the first
        four days of therapy is 50 mg (Day 1), 100 mg (Day 2), 200 mg (Day 3) and 300 mg
        (Day 4).  From Day 4 onwards, the dose is often titrated to an effective dose in the range
        of 300-450 mg/day or less.  That is, Seroquel is usually given once daily, with the dose
        often adjusted upward until an optimal dose is found.

**ANSWER:**  AstraZeneca admits that SEROQUEL® is available in 25 mg, 100 mg, 200 mg, and

300 mg tablets, but denies that the allegations of paragraph 34 fully and accurately describe the

---

[1] Plaintiff's Complaint does not contain allegations numbered 31 or 32.  For consistency, the numbering of
Plaintiff's Complaint has been retained.

proper dosage and administration of SEROQUEL®.  AstraZeneca denies the remaining

allegations of paragraph 34.

35.     In a case-control study of 13,611 inpatients in facilities operated by the New York State
        Office of Mental Hygiene, rates of diabetes were compared in patients taking first and
        second generation antipsychotics.  New cases of diabetes were identified by a new
        prescription for an anti-diabetic medication.  8,461 patients met the inclusion criteria of
        being hospitalized for more than 60 days and not using anti-diabetic medications in the
        past.  1,539 of these patients received a prescription for anti-diabetic medication for a
        prevalence rate 11.31%.  Of these, 181 were new prescriptions.  Eight controls were
        matched to each case by year, length of observation period, race, age, and diagnosis for a
        total of 1,448 controls.  Of the 24 cases and 112 controls who took Seroquel, the odds
        ratio of developing diabetes was 3.09 (95% Cl = 1.59-6.03) compared to taking a first
        generation antipsychotic.  There was also a statistically significant elevation in risk for
        those patients taking more than one second generation antipsychotic (OR = 2.86, 95% CI
        = 1.57-5.2).  42 of the 181 cases of treatment emergent diabetes developed in the group
        taking more than one second generation antipsychotic.  20 of those 42 cases of new onset
        diabetes (47%) were taking Seroquel as one of two atypicals. Citrome L, Jaffe A, Levine
        J, Allingham B, Robinson J; *Relationship between antipsychotic medication treatment
        and new cases of diabetes among psychiatric inpatients*. Psychiatric Services 2004;
        55:1006-13.

**ANSWER:**  AstraZeneca admits that the allegations of paragraph 35 purport to refer to an article

discussing "the New York State Office of Mental Hygiene" published in *Psychiatric Services* in

2004, and states that the content of any such article speaks for itself.  AstraZeneca denies any

remaining or inconsistent allegations of paragraph 35.

36.     The marketing and promotion efforts of AstraZeneca, through its advertisers and sales
        force, overstated the benefits of Seroquel and minimized, downplayed and concealed the
        risks associated with this drug.  Despite the fact that AstraZeneca knew or should have
        known that Seroquel was associated with the aforesaid adverse effects, including diabetes
        mellitus, it recklessly, negligently, and with willful and wanton indifference to the health
        and safety of consumers, failed to include any warning regarding hyperglycemia, diabetes
        mellitus, or related conditions until on or after January 2004.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 36.

37.     Recently, researchers at the National Institute of Mental Health published a report on
        atypical antipsychotics, including Seroquel, which found that the majority of patients in
        each group discontinued their assigned treatment owing to inefficacy or intolerable side
        effects or for other reasons and that the atypicals, including Seroquel, were no more
        effective than the older, cheaper, and still available conventional antipsychotic

perphenazine. This report echoes the conclusions reported in the *British Medical Journal* in 2000.

**ANSWER:**  AstraZeneca states that, upon information and belief, the National Institute of

Health, Office of Science and Planning, provided support for a study on weight gain in

schizophrenics, and states that the study speaks for itself.  AstraZeneca further states that, upon

information and belief, an article comparing the use of atypical antipsychotics in the treatment of

schizophrenia was published in a December 2000 issue of the *British Medical Journal*, and states

that the article speaks for itself.  AstraZeneca denies any remaining or inconsistent allegations of

paragraph 37.

38.     In January 2006, AstraZeneca was notified that the U.S. Attorney's Office in Los
        Angeles, California, had commenced an investigation of AstraZeneca's promotional
        activities related to its products, including Seroquel.

**ANSWER:**  AstraZeneca admits that in January of 2006 it received notice of an investigation by

the U.S. Attorney's Office in Los Angeles into field promotional activities in the area served by

AstraZeneca's Los Angeles regional business center.  AstraZeneca denies any remaining or

inconsistent allegations of paragraph 38.

39.     Despite AstraZeneca's knowledge regarding the safety risks its drug posed, they
        continued to ignore, downplay, sidestep, and delay the dissemination of open and frank
        information that patients and physicians needed to avoid the life-threatening injuries that
        Seroquel could cause. As a result of this callous disregard for human safety in the name
        of profits, Plaintiff has suffered the injuries, damages, and losses complained of herein.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 39.

## RESPONSE TO "V.  FRAUDULENT CONCEALMENT AND
## APPLICATION OF THE DISCOVERY RULE"

40.     The nature of Plaintiff's injuries and their relationship to Seroquel use were inherently undiscoverable; and, consequently, the discovery rule should be applied to toll the running of the statute of limitations until Plaintiff knew or through the exercise of reasonable care and diligence should have known of the existence of their claims against AstraZeneca.  Plaintiff did not discover, and through the exercise of reasonable care and due diligence, could not have discovered, their injuries earlier.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 40 state legal conclusions to

which no response is required.  To the extent that the allegations of paragraph 40 are construed

as factual allegations, they are denied.

41.     Further, Plaintiff did not have knowledge of facts that would lead a reasonable, prudent person to make inquiry to discover Defendants' tortious conduct.  Under appropriate application of the "discovery rule," Plaintiff's suit was filed well within the applicable statutory limitations period.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 41 state legal conclusions to

which no response is required.  To the extent that the allegations of paragraph 41 are construed

as factual allegations, they are denied.

42.     AstraZeneca affirmatively and intentionally lulled, induced, and otherwise prevented Plaintiff from discovering the existence of their various causes of action against AstraZeneca though its fraudulent acts, omissions, concealments and suppression of the dangers associated with its drug and other information necessary to put Plaintiff on notice.  Plaintiff has therefore been kept in ignorance of vital information essential to the pursuit of his or her claims, without any fault or lack of diligence on their part.  Plaintiff could not reasonably have discovered the fraudulent nature of AstraZeneca's conduct.  Accordingly, AstraZeneca is estopped from relying on any statue of limitations to defeat any of Plaintiff's claims.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 42.

## RESPONSE TO "VI.  CAUSES OF ACTION"
## FIRST CLAIM FOR RELIEF
## NEGLIGENCE"

43.     Plaintiff hereby incorporates by this reference all other paragraphs of this Complaint as if fully set forth herein at length.

**ANSWER:** AstraZeneca incorporates by reference all other paragraphs of this Answer as if

fully set forth herein.

44.     AstraZeneca is the designer, manufacturer, and seller of the drug Seroquel.

**ANSWER:** AstraZeneca admits that, pursuant to FDA approval, it manufactures and sells

SEROQUEL® for prescription by licensed physicians in the United States.    AstraZeneca denies

any remaining or inconsistent allegations of paragraph 44.

45.     When placed in the stream of commerce in 1997, Seroquel was not accompanied by
        adequate warnings regarding the significant blood sugar related risks associated with the
        ingestion of Seroquel, particularly diabetes mellitus.  The warnings given by the Seroquel
        Defendants did not accurately reflect the existence of the risk, let alone the incidence,
        symptoms, scope, or severity of such injuries.

**ANSWER:** AstraZeneca denies the allegations of paragraph 45.

46.     AstraZeneca failed to perform adequate testing concerning the safety of the drug
        Seroquel in that adequate testing would have shown that Seroquel poses serious risk of
        blood sugar related problems, which would have permitted adequate and appropriate
        warnings to have been given by AstraZeneca to prescribing physicians, health insurance
        companies, the various states' formularies, and the consuming public.

**ANSWER:** AstraZeneca denies the allegations of paragraph 46.

47.     AstraZeneca had a duty to exercise reasonable care in the design, manufacture, sale and
        distribution of the drug, Seroquel, including a duty to assure that the product did not
        cause users to suffer from unreasonable, dangerous side effects when used alone or in
        foreseeable combination with other drugs.

**ANSWER:** AstraZeneca states that the allegations of paragraph 47 state legal conclusions to

which no response is required.  To the extent that the allegations of paragraph 47 are construed

as factual allegations, AstraZeneca states that the allegations of paragraph 47 are conclusory,

vague, and ambiguous, and denies that the allegations of paragraph 47 fully and accurately state

its duty under the law, and therefore denies those allegations.  AstraZeneca admits that at all

times it complied with its duty under the law.  AstraZeneca denies any remaining or inconsistent

allegations of paragraph 47.

48.     AstraZeneca was negligent in the design, manufacturing, testing, advertising, marketing, promotion, labeling, warnings given, and sale of Seroquel in that, among other things, the Seroquel Defendants:

a.      failed to provide Americans a warning for diabetes that AstraZeneca concluded the Japanese were entitled to;

b.      failed to use reasonable care to design an atypical anti-psychotic that was safe for its intended and foreseeable uses, not defective, and not unreasonably dangerous;

c.      failed to use reasonable care in designing and manufacturing Seroquel as to make it safe for its intended uses, not defective, and not unreasonably dangerous;

d.      recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, and/or concealed material acts regarding the safety and efficacy of Seroquel from prescribing physicians, the medical community at large, health insurers, and state formularies;

e.      negligently marketed Seroquel despite the fact that risks of the drug were so high and the benefits of the drug were so speculative that no reasonable pharmaceutical company, exercising due care, would have done so;

f.      failed to use reasonable care to make reasonable tests, inspections, drug trials, and/or evaluations associated with AstraZeneca's drug, Seroquel;

g.      failed to use reasonable care to investigate and/or use known and/or knowable reasonable alternative designs, manufacturing processes, and/or materials for Seroquel;

h.      failed to use reasonable care to warn Plaintiff of dangers known and/or reasonably suspected by AstraZeneca to be associated with Seroquel;

i.      failed to timely use reasonable care to discover the dangerous conditions or character of AstraZeneca's drug, Seroquel;

j.      failed to use due care in the design, testing and manufacturing of Seroquel so as to prevent the aforementioned risks, including, *inter alia*, diabetes mellitus, and the serious complications stemming there from including seizures, coma, death, liver disease, kidney disease, blindness, and other serious side effects including rapid weight gain, pancreatitis, urinary frequency and hyperglycemia;

k.      failed to issue proper warnings regarding important possible adverse side effects associated with the use of Seroquel and the comparative severity and duration of such adverse effects, despite the fact that the Seroquel Defendants knew, or should have known, that numerous cases reports, adverse event reports, and other data that associated Seroquel with diabetes mellitus, and the serious complications stemming there from including seizures, coma, death, liver disease, kidney

disease, blindness, and other serious side effects including rapid weight gain, pancreatitis, urinary frequency, and hyperglycemia;

l.      failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety of Seroquel;

m.     failed to provide adequate training and information to medical care providers for the appropriate use of Seroquel;

n.     failed to warn Plaintiff and healthcare providers, prior to actively encouraging and promoting the sale of Seroquel, either directly, or indirectly, orally, in writing, or other media about the following:

     (1)     The need for a battery of diagnostics tests to be performed on the patient prior to ingesting Seroquel to discover risk factors and help prevent potentially fatal side effects;

     (2)     The need for comprehensive, regular medical monitoring to ensure early discovery of hyperglycemia, diabetes, weight gain, hyperlipidemia, hypertriglyceridemia, pancreatitis, and other potentially fatal side effects;

     (3)     The adverse side effects associated with the use of Seroquel, including, but not limited to, diabetes mellitus; and/or

     (4)     The possibility of becoming disabled as a result of using Seroquel; and,

o.     failed to timely develop and implement a safer, alternative design of Seroquel, which would meet the same need without the known risks associated with Seroquel and which would not have make the product too expensive to maintain its utility; and

p.     failed to carry out the ongoing duty of pharmacovigilance, including to continually monitor, test, and analyze epidemiology and pharmacovigilance data regarding safety, efficacy, and prescribing practices; to review worldwide adverse event reports, worldwide medical literature, and to monitor the Seroquel Defendants own warnings in other countries (including Japan) and learning of or failing to learn of a signal and an association between Seroquel and diabetes, and related health problems, and failing to inform doctors, regulatory agencies, and the public of new safety and efficacy information it learns, or should have learned about Seroquel once that information becomes available to it.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 48, including all its subparts.

49.     Despite the fact that the Seroquel Defendants knew or should have known that Seroquel caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, the Seroquel Defendants continued to market Seroquel to consumers, including Plaintiff, when there were safer alternative methods available.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 49.

50.     AstraZeneca knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of AstraZeneca's failure to exercise ordinary care as described above.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 50.

51.     As a direct and proximate result and legal result of the AstraZeneca's failure to supply appropriate warnings for the drug, Seroquel, and as a direct and legal result of the negligence, carelessness, other wrongdoing and action of the Seroquel Defendants described herein, the Plaintiff ingested Seroquel and suffered significant injury.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 51.

52.     AstraZeneca's negligence was a proximate cause of the harm suffered by the Plaintiff.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 52.

53.     As a direct and proximate cause and legal result of the AstraZeneca's negligence, carelessness, and the other wrongdoing and actions of the Seroquel Defendants as described herein, Plaintiff has suffered physical injury, medical expense, future medical expense, and have incurred financial expenses and have suffered economic losses.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 53.

**SECOND CLAIM FOR RELIEF**
**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

54.     Plaintiff hereby incorporates by this reference all other paragraphs of this Complaint as if fully set forth herein at length.

**ANSWER:**  AstraZeneca incorporates by reference all other paragraphs of this Answer as if

fully set forth herein.

55.     Seroquel was marketed to physicians and was marketed and advertised directly to the consuming public.  Seroquel, as manufactured and supplied to healthcare professionals and the general public, was unaccompanied by proper warnings regarding the serious risks of ingesting the drug.  The information provided to consumers did not reflect Defendants' knowledge that Seroquel was not safe and effective as indicated in its aggressive marketing campaign, nor were consumers make aware that ingesting the drug could result in serious injury, pain and diabetes and/or death.  Additionally, Defendants committed overt acts and issued doublespeak in order to downplay the truth that began to surface.  This information began to emerge in the form of adverse event reports, medical studies, and the 2003 FDA labeling change mandate.  Any attempts by Defendants to satisfy its duty to warn were compromised by the backdrop of the Seroquel Defendants'

23

actions, including but not limited to its 2002 diabetes warning in Japan.  As part of the aggressive marketing of Seroquel, sales representatives actively detailed and promoted the drug to physicians, pharmacists and other health care providers by understating, denying and or trivializing risks, overstating benefits, promoting indications outside of the label, and generally diluting the import of the label with aggressive promotion techniques to gain market share.  Moreover, defendant improperly misinformed the medical community by intentionally disseminating false and misleading information into the medical literature that understated or minimized the risks and over-stated benefits and promoted the product for off-label use.

**ANSWER:**  AstraZeneca admits that, pursuant to FDA approval, it manufactures, markets, advertises, and supplies SEROQUEL® for prescription by licensed physicians in the United States.  AstraZeneca denies the remaining allegations of paragraph 55.

56.     Full and proper warnings that accurately and fully reflected the risks of serious injury and/or sudden death due to the ingestion of Seroquel should have been disclosed by Defendants.  Plaintiff was prescribed Seroquel by physicians who utilized the drug in a manner reasonably foreseeable by Defendants.  Seroquel was expected to and did reach Plaintiff without substantial change in its condition as tested, manufactured, designed, labeled, packaged, marketed and distributed.  Plaintiff was not aware of, and could not have reasonably discovered, the unreasonably dangerous nature of Seroquel.

**ANSWER:**  AstraZeneca admits that, pursuant to FDA approval, it manufactures and supplies SEROQUEL® for prescription by licensed physicians in the United States.  AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56 that Plaintiff was prescribed SEROQUEL® by Plaintiff's physicians or that any such prescribing physicians used SEROQUEL® in a manner reasonably foreseeable by AstraZeneca, and therefore denies same.  AstraZeneca further lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56 that any SEROQUEL® reached Plaintiff without substantial change in its condition, and therefore denies same.  AstraZeneca denies that SEROQUEL® is unreasonably dangerous in nature.

AstraZeneca denies the remaining allegations of paragraph 56.

57.     The marketing defect resulting from such inadequate and improper warnings, instructions and dissemination of information to the medical community and Plaintiff directly, was the producing cause and legal and direct result of the failure to warn consumers of the

defective condition of Seroquel, as manufactured and/or supplied by the Seroquel Defendants and its representatives, Plaintiff has suffered severe, permanent and disabling injuries and related damages.

**ANSWER:** AstraZeneca denies the allegations of paragraph 57.

## THIRD CLAIM FOR RELIEF
## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

58.   Plaintiff hereby incorporates by this reference all other paragraphs of this Complaint as if fully set forth herein at length.

**ANSWER:** AstraZeneca incorporates by reference all other paragraphs of this Answer as if

fully set forth herein.

59.   The Seroquel Defendants, acting through authorized agents, servants, employees and/or representatives, placed Seroquel into the stream of commerce.  Plaintiff was prescribed Seroquel by Plaintiff's physicians and used the drugs in a manner normally intended, recommended, promoted and marketed by the Seroquel Defendants.  Seroquel failed to perform safely when used by ordinary consumers including Plaintiff, even when used as intended or in a reasonably foreseeable manner.  Accordingly, Seroquel was defective in its design and was unreasonably danger in that its foreseeable risks exceeded the benefits associated with its design or formulation.

**ANSWER:** AstraZeneca admits that, pursuant to FDA approval, it distributes, markets, and

sells SEROQUEL® for prescription by licensed physicians in the United States.  AstraZeneca

lacks knowledge or information sufficient to form a belief as to the truth of the allegations of

paragraph 59 that Plaintiff was prescribed SEROQUEL® by Plaintiff's physicians or that

Plaintiff used SEROQUEL® in a manner normally intended or reasonably foreseeable by

AstraZeneca, and therefore denies same.  AstraZeneca denies the remaining allegations of

paragraph 59.

60.   The Seroquel ingested by Plaintiff was expected to and did reach Plaintiff without substantial change in it condition as tested, manufactured, designed, labeled, packaged, marketed and distributed and plaintiff could not through the exercise of reasonable care, have discovered Seroquel's defects or perceived the danger of its use.  Seroquel was defective in design or formulation in that its use posed a greater likelihood of injury than other available antipsychotic medications and was more dangerous that ordinary consumer could reasonable foresee.  As a result of his or her use of Seroquel, Plaintiff suffered severe, permanent and disabling injuries and related damages.

**ANSWER:** AstraZeneca lacks knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 60 that the SEROQUEL® allegedly ingested by Plaintiff

reached Plaintiff without substantial change in its condition, and therefore denies same.

AstraZeneca denies the remaining allegations of paragraph 60.

## FOURTH CLAIM FOR RELIEF
## FRAUD AND INTENTIONAL MISREPRESENTATION

61.     Plaintiff hereby incorporates by this reference all other paragraphs of this Complaint as if
        fully set forth herein at length.

**ANSWER:** AstraZeneca incorporates by reference all other paragraphs of this Answer as if

fully set forth herein.

62.     AstraZeneca through Advertising, labeling, direct product detailing by sales
        representatives to the medical community, and other communications including letters to
        medical community, and medical literature disseminated made misrepresentations to
        physicians and the public, including Plaintiff, about the safety and efficacy of Seroquel.
        Physicians and their patients, including Plaintiff, justifiably relied on AstraZeneca's
        misrepresentations, and Plaintiff were harmed as a result.  Plaintiff is entitled to recover
        damages for his or her injuries produced by AstraZeneca's misrepresentations.
        Physicians and their patients, including the Plaintiff, relied on AstraZeneca's
        misrepresentations, and were harmed as a result.  Plaintiff is entitled to recover actual
        damages for his or her injuries as a result of the AstraZeneca's misrepresentations and
        fraud.

**ANSWER:** AstraZeneca denies the allegations of paragraph 62.

63.     Defendants are in the business of manufacturing, marketing, distributing and/or selling
        these drugs through their advertising and through labels on their products.  Defendants
        made misrepresentations to the public at large and specifically to Plaintiff and her
        physician.

**ANSWER:** AstraZeneca admits that, pursuant to FDA approval, it manufactures, markets,

distributes, and sells SEROQUEL® for prescription by licensed physicians in the United States.

AstraZeneca denies the remaining allegations of paragraph 63.

64.     Defendants breached their duty to Plaintiff under the RESTATEMENT (SECOND) OF
        TORTS § 402(B)(1965) regarding the misrepresentations set out above.  Defendants
        represented the product to be safe to use.  These were material misrepresentation of fact

concerning the character, nature and dangerous propensities of the product manufactured, sold, and marketed by Defendants.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 64.

65.    Plaintiff and his or her physicians justifiably relied upon the misrepresentations made by the Seroquel Defendants.  Such conduct by the Seroquel Defendants proximately caused injuries and damages to Plaintiff for which Plaintiff now seeks to recover damages.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 65.

**FIFTH CLAIM FOR RELIEF**
**NEGLIGENT MISREPRESENTATION**

66.    Plaintiff hereby incorporates by this reference all other paragraphs of this Complaint as if fully set forth herein at length.

**ANSWER:**  AstraZeneca incorporates by reference all other paragraphs of this Answer as if

fully set forth herein.

67.    The Seroquel Defendants, in addition to knowing misrepresentations, made misrepresentations without any reasonable grounds for believing its statements to be true to Plaintiff, other patients, and the medical and psychiatric communities.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 67.

68.    The Seroquel Defendants, through it misrepresentations, intended to induce justifiable reliance by Plaintiff, other patients, and the medical and psychiatric communities.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 68.

69.    The Seroquel Defendants, through its marketing campaign and communications with treating physicians or psychiatrists, was in a relationship so close to that of Plaintiff and other patients that it approaches and resembles privity.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 69.

70.    The Seroquel Defendants owe a duty to the medical and psychiatric communities, Plaintiff, and other consumers, to conduct appropriate and adequate studies and tests for all its products, including, Seroquel, and to provide appropriate and adequate information and warnings.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 70 state legal conclusions to

which no response is necessary.  To the extent that such allegations are construed as factual

allegations, AstraZeneca states that those allegations are conclusory, vague, and ambiguous, and

27

therefore AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth

of those allegations and denies same.  AstraZeneca denies that the allegations of paragraph 70

fully and accurately state its duty under the law.  AstraZeneca admits that at all times it complied

with its duty under the law.  AstraZeneca denies any remaining or inconsistent allegations of

paragraph 70.

71.    The Seroquel Defendants failed to conduct appropriate or adequate studies for Seroquel.
       The Seroquel Defendants failed to exercise reasonable care by failing to conduct studies
       and tests of Seroquel.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 71.

72.    As a direct and proximate result of the Seroquel Defendant's negligent
       misrepresentations, Plaintiff developed diabetes, pancreatitis, and/or life threatening
       complications there from and were caused to suffer severe and permanent injuries, pain,
       and mental anguish, including diminished enjoyment of life, and fear or developing other
       harmful conditions including but not limited to, pancreatitis, diabetic ketoacidosis and
       diabetic coma.  The Seroquel Defendants are liable to Plaintiff jointly and severally for
       all general, special and equitable relief to which Plaintiff is entitled by law.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 72.

## SIXTH CLAIM FOR RELIEF
## BREACH OF EXPRESS WARRANTY

73.    Plaintiff hereby incorporates by this reference all other paragraphs of this Complaint as if
       fully set forth herein at length.

**ANSWER:**  AstraZeneca incorporates by reference all other paragraphs of this Answer as if

fully set forth herein.

74.    The Seroquel Defendants are merchants and/or sellers of Seroquel.  Defendants sold
       Seroquel to consumers, including Plaintiff, for the ordinary purpose for which consumers
       use such drugs.  The Seroquel Defendants made representations to Plaintiff about the
       quality or characteristics of Seroquel by affirmation of fact, promise and/or description.

**ANSWER:**  AstraZeneca admits that, pursuant to FDA approval, it sells SEROQUEL® for

prescription by licensed physicians in the United States.  AstraZeneca denies that it sells

SEROQUEL® directly to consumers, including Plaintiff.  AstraZeneca denies the remaining

allegations of paragraph 74.

75.     The representations by the Seroquel Defendants became part of the basis of the bargain
        between Defendants and Plaintiff.  Seroquel did not comport with the representations
        made by Defendants in that it was not safe for the use which it was marketed.  Plaintiff
        has notified Defendants that Defendants has breached its express warranties.  This breach
        of warranty by Defendants was a proximate cause of the injuries and monetary loss
        suffered by Plaintiff.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 75.

**SEVENTH CLAIM FOR RELIEF**
**BREACH OF IMPLIED WARRANTY**

76.     Plaintiff hereby incorporates by this reference all other paragraphs of this Complaint as if
        fully set forth herein at length.

**ANSWER:**  AstraZeneca incorporates by reference all other paragraphs of this Answer as if

fully set forth herein.

### 1.     WARRANTY OF MERCHANTABILITY

77.     The Seroquel Defendants are merchants and/or sellers of Seroquel.  Plaintiff purchased
        Seroquel as placed in the stream of commerce by the Seroquel Defendants and used it for
        the ordinary purpose for which consumers use such drugs.  At the time it was purchased
        by Plaintiff, Seroquel was not fit for the ordinary purpose for which such drugs are used
        because it was not manufactured, designed or marketed in a manner to accomplish its
        purpose safely.  The Seroquel Defendants' breach of its implied warranty of
        merchantability was a direct and proximate cause of Plaintiff's injuries, diseases, and
        damages complained herein.

**ANSWER:**  AstraZeneca admits that, pursuant to FDA approval, it sells SEROQUEL® for

prescription by licensed physicians in the United States.  AstraZeneca denies the remaining

allegations of paragraph 77.

### 2.     WARRANTY OF FITNESS

78.     The Seroquel Defendants placed Seroquel into the stream of commerce with the
        knowledge that Plaintiff was purchasing said drugs for a particular purpose.  Further,
        Defendants knew, or should have known, that Plaintiff was relying on Defendants skill or
        judgment to select goods fit for Plaintiff's purpose.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 78.

79.   The Seroquel Defendants delivered goods that were unreasonably dangerous and unfit for Plaintiff's particular purpose, in that they were defectively designed and did not come with adequate warnings.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 79.

80.   The Seroquel Defendants' failure to select and sell a product that was reasonably safe for its intended use was a direct and proximate cause of Plaintiff's injuries, diseases, and damages complained of herein.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 80.

## EIGHTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT

81.   Plaintiff hereby incorporates by this reference all other paragraphs of this Complaint as if fully set forth herein at length.  To the Detriment of Plaintiff the Seroquel Defendants have been, and continue to be, unjustly enriched as a result of the unlawful and/or wrongful collection of, inter alia, payments for Seroquel.

**ANSWER:**  AstraZeneca incorporates by reference all other paragraphs of this Answer as if

fully set forth herein.  In addition, AstraZeneca denies the allegations of paragraph 81.

82.   Plaintiff was injured by the cumulative and indivisible nature of the Seroquel Defendants' conduct.  The cumulative effect of the Seroquel Defendants' conduct directed at physicians and consumers was to artificially create demand for Seroquel at an artificially inflated price.  Each aspect of the Seroquel Defendants' conduct combined to artificially create sales of Seroquel.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 82.

83.   The Seroquel Defendants have unjustly benefited through the unlawful and/or wrongful collection of, inter alia, payments for Seroquel and continue to so benefit to the detriment and at the expense of Plaintiff.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 83.

84.   Accordingly, Plaintiff seeks full disgorgement and restitution of the Seroquel Defendants' enrichment, benefits and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 84.

## NINTH CLAIM FOR RELIEF
## VIOLATION IF STATE CONSUMER PROTECTION LAWS

85.  Plaintiff here by incorporates by this reference all other paragraphs of this Complaint as if fully set forth herein at length.

**ANSWER:**  AstraZeneca incorporates by reference all other paragraphs of this Answer as if

fully set forth herein.

86.  The Seroquel Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of various state consumer protection statutes that allow consumers to pursue claims.  Plaintiff asserts claims that arise in the states identified below and pursuant to the statues identified below:

    (a)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Alaska Stat. Code §40.50.471</u>, et seq.;

    (b)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Ariz. Rev. Stat. § 44-1522</u>, et seq.;

    (c)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Ark. Code § 4-88-101</u>, et seq.;

    (d)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Cal. Bus. & Prof. Code § §17200</u>, et seq.;

    (e)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Colo. Rev. Stat. § 6-1-105</u>, et seq. and the Consumer Legal Remedies Act, <u>Civ. Code § 1750</u>, et seq.;

    (f)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Conn. Gen. Stat. § 42-110b</u>, et seq.;

    (g)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>6 Del. Code §2511</u>, et seq.;

    (h)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>D.C. Code § 28-3901</u>, et seq.;

    (i)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Fla. Stat. § 501.201</u>, et seq.;

    (j)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Haw. Rev. Stat. § 480</u>, et seq.;

(k)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Idaho Code § 48-601</u>, et seq.;

(l)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>815 ILCS § 505/1</u>, et seq.;

(m)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Ind. Code Ann. § 24-5-0.5.1</u>, et seq.;

(n)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Kan. Stat. § 50-623</u>, et seq.;

(o)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Ky. Rev. Stat. § 367. 110</u>, et seq.;

(p)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>5 Me. Rev. Stat. § 207</u>, et seq.;

(q)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Md. Com. Law Code § 13-101</u>, et seq.;

(r)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Mass. Gen, L Ch. 93.A</u>, et seq.;

(s)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Mich. Stat. § 445.901</u>, et seq.;

(t)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Minn. Stat. § 325F.67</u>, et seq.;

(u)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's <u>Mo. Rev. Stat. § 407.010</u>, et seq.;

(v)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Mont. Code § 30-14-101</u>, et seq.;

(w)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Neb. Rev. Stat. § 59-1601</u>, et seq.;

(x)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Nev. Rev Stat. § 598.0903</u>, et seq.;

(y)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>N.H. Rev. Stat. § 358-A:1</u>, et seq.;

(z)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>N.J. Stat. Ann. § 56:8-1</u>, et seq.;

(aa)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>N.M Stat. Ann. § 57-12-1</u>, et seq.;

(bb)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>N.Y. Gen. Bus. Law § 349</u>, et seq.;

(cc)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>N.C. Gen Stat. § 75-1.1</u>, et seq.;

(dd)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>N.D. Cent. Code § 51-15-01</u>, et seq.;

(ee)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Ohio Rev. Stat. § 1345-01</u>, et seq.;

(ff)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made representations in violation of <u>Okla. Stat tit. 15 § 751</u>, et seq.;

(gg)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Or. Rev. Stat. § 646.605</u>, et seq.;

(hh)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>73 Pa. Stat. § 201-1</u>, et seq.;

(ii)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>R.I. Gen. Laws. § 6-13.1-1</u>, et seq.;

(jj)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>S.C. Code Laws § 39-5-10</u>, et seq.;

(kk)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>S.D. Code Laws § 39-5-10</u>, et seq.;

(ll)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Tenn. Code § 44-18-101</u>, et seq.;

(mm)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Tex. Bus. & Com. Code § 17.41</u>, et seq.;

(nn)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Utah Code Ann. § 13-1 1-1</u>, et seq.;

(oo)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Vt. Stat. Ann. tit. 9, § 245-1</u>, et seq.;

(pp)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Va. Code § 59.1-196</u>, et seq.;

     (qq)    Defendants have engaged in unfair competition or unfair or deceptive acts or fraudulent acts or practices in violation of <u>Wash. Rev. Code § 19.86.010</u>, et seq.;

     (rr)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>W. Va. Code § 46A-6-101</u>, et seq.;

     (ss)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Wis. Stat. § 100.20</u>, et seq.;

     (tt)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of <u>Wyo. Stat. § 40-12-100</u>, et seq.;

**ANSWER:**  AstraZeneca denies the allegations of paragraph 86, including all of its subparts.

**TENTH CLAIM FOR RELIEF**
**GROSS NEGLIGENCE/MALICE**

87.    Plaintiff hereby incorporates by this reference all other paragraphs of this Complaint as if fully set forth herein at length

**ANSWER:**  AstraZeneca incorporates by reference all other paragraphs of this Answer as if

fully set forth herein.

88.    The wrongs done by the Seroquel Defendants were aggravated by the kind of malice, fraud and reckless disregard for the rights of others, the public and Plaintiff for which the law allows the imposition of exemplary damages, in that the Seroquel Defendants' conduct:

- was specifically intended to cause substantial injury to Plaintiff;

- when viewed objectively from the Seroquel Defendants' standpoint at the time of the conduct, involved an extreme degree if risk, considering the probability and magnitude of the potential harm to other, and the Seroquel Defendants were actually, subjectively aware of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of other; or

- included a material representation that was false, with the Seroquel Defendants knowing that it was false or with reckless disregard as to its truth and as a positive assertion, with the intent that the representation be acted on by Plaintiff.  Plaintiff relied on the representation and suffered injury as a proximate result of this reliance.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 88, including all of its subparts.

89.    Plaintiff therefore seeks exemplary damages in an amount within the jurisdictional limits of the court.  Plaintiff also alleges that the acts and omissions of names AstraZeneca, whether taken singularly or in combination with others, constitute gross negligence that

proximately caused the injuries to Plaintiff.  In that regard, Plaintiff seeks exemplary damages in an amount that would punish Defendants for their conduct and which would deter other manufacturers from engaging in such misconduct in the future.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 89.

90.     AstraZeneca's actions, described above, were performed willfully, intentionally, with malice and/or with reckless disregard for the rights of Plaintiff and the public.  At a minimum, AstraZeneca's acts and omissions were (a) specifically intended to cause substantial injury to Plaintiff and/or (b) when viewed objectively from the standpoint of the Seroquel Defendants at the time of their occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.  AstraZeneca had actual and subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others, including Plaintiff.  As such, Plaintiff is entitled to punitive damages against AstraZeneca.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 90.

### RESPONSE TO "VII.  DAMAGES"

91.     By reason of the foregoing, Plaintiff, demands judgment for damages against the Seroquel Defendants including compensatory damages, costs of the prosecution of this action, and further, demands trial by jury of all issues so triable, and for such other and further relief as this Court deems just and proper.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 91.

92.     As a direct and proximate result of Plaintiff's ingestion and use of AstraZeneca's defective product, Seroquel, Plaintiff has suffered from hyperglycemia, acute weight gain, diabetes mellitus, pancreatitis and/or other severe medical conditions as well as the following related damages:

    a.      past and future disability and/or physical impairment;

    b.      past and future emotional distress and mental anguish;

    c.      past and future pain and suffering;

    d.      past and future medical expenses necessary as a result of Defendant's conduct;

    e.      past and future physical disfigurement;

Plaintiff seeks recovery for each of these elements of damage.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 92, including all of its subparts.

## RESPONSE TO "VIII.  PUNITIVE DAMAGES"

93.   Plaintiff hereby incorporate by this reference all other paragraphs of this Complaint as if
      fully set forth herein at length.

**ANSWER:**  AstraZeneca incorporates by reference all other paragraphs of this Answer as if

fully set forth herein.

94.   At all times relevant hereto, Defendants had actual knowledge of the defective and
      dangerous nature of Seroquel as set forth herein and continued to design, manufacture,
      market, promote, distribute and sell it so as to maximize sales and profits at the expense
      of the public's health and safety and in conscious disregard for the foreseeable serious
      harm caused by the drug.  The Seroquel Defendants' conduct exhibits such an entire want
      of care as to establish that its actions were a result of fraud, ill will, recklessness, gross
      negligence, malice and/or willful and intentional disregard for the safety and rights of
      consumers of its drugs such as Plaintiff.  Plaintiffs therefore seek to recover punitive and
      exemplary damages to the fullest extent permitted by law.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 94.

## RESPONSE TO "IX. STATE STATUTORY PRODUCT LIABILITY LAW"

95.   To the extent the state where Plaintiff resides has statutory product liability law in
      addition to or in lieu of the common law allegations set forth above, Plaintiff hereby
      pleads and incorporates by reference those statutory allegations.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 95 state legal conclusions to

which no response is required.  To the extent that the allegations of paragraph 95 are construed

as factual allegations, they are denied.

## RESPONSE TO "X.  DEMAND FOR JURY TRIAL"

96.   Plaintiff hereby demands trial by jury in this action of all issues so triable.

**ANSWER:**  AstraZeneca admits the allegations of paragraph 96.

## RESPONSE TO "PRAYER FOR RELIEF"

WHEREFORE, Plaintiff demands judgment against the Seroquel Defendants as follows:

   (a)    compensatory damages on each cause of action;
   (b)    punitive damages on all counts as permitted by applicable law;
   (c)    awarding reasonable attorneys' fees, expert fees, costs of prosecution and costs of
          court;
   (d)    prejudgment and post-judgment interest at the highest legal rate, and

(e)      granting such additional and further relief as the Court deems just and proper.

**ANSWER:**  The unnumbered paragraph in this section of the Complaint is not an allegation and therefore no responsive pleading is required.  Should a response be deemed necessary, AstraZeneca denies each and every allegation contained in said paragraph, except that AstraZeneca admits that Plaintiff purports to seek a variety of damages.  AstraZeneca denies that there is any factual or legal basis for the relief sought by Plaintiff.

### AFFIRMATIVE DEFENSES

1.      Plaintiff's Complaint against AstraZeneca fails to state a claim upon which relief may be granted.

2.      Plaintiff's alleged injuries were proximately caused by circumstances, events, or persons over whom AstraZeneca had no authority or control and for which AstraZeneca is not answerable in damages to Plaintiff.

3.      AstraZeneca denies that Plaintiff used any product manufactured by AstraZeneca as alleged in Plaintiff's Complaint.

4.      Plaintiff's Complaint fails to state a claim upon which relief can be granted against AstraZeneca in that the methods, standards, and techniques utilized with respect to the design, manufacture, marketing, and sale of the prescription drug SEROQUEL®, including adequate warnings and instructions with respect to the product's use included in the product's package insert and other literature, conformed to the applicable state of the art, and the applicable standard of care based upon available medical and scientific knowledge.  Thus, SEROQUEL® was at all times reasonably safe and reasonably fit for its intended use.

5.      Persons other than AstraZeneca stood in the position of learned intermediary between Plaintiff and AstraZeneca.  Therefore, AstraZeneca did not owe or breach any duty to warn Plaintiff directly, and the SEROQUEL® Plaintiff allegedly used was neither unreasonably

dangerous nor defective by virtue of any alleged absence of adequate warnings or instructions from AstraZeneca.

6.      Plaintiff and/or Plaintiff's physicians were aware or should have been aware of any potential hazards reported to be associated with the use of SEROQUEL® and appreciated or should have appreciated these potential hazards based, in part, on the directions, information, and warnings provided by AstraZeneca and others generally available in the medical and scientific literature.  Therefore, Defendant AstraZeneca had no duty to warn Plaintiff directly of any alleged danger or defect.

7.      Plaintiff's claims for breach of warranty are barred because Plaintiff failed to give timely notice of any alleged breach of warranty.

8.      AstraZeneca did not sell or distribute the prescription drug SEROQUEL® directly to Plaintiff, and Plaintiff did not receive or rely upon any representations or warranties as alleged in the Complaint.  Plaintiff's claims are therefore barred by lack of privity between Plaintiff and AstraZeneca.

9.      Plaintiff's claims for breach of warranty, express or implied, are barred by the applicable provisions of the applicable state's Uniform Commercial Code.

10.      Plaintiff's Complaint fails to state a claim for which relief can be granted for fraud, misrepresentation, deception, omission, or concealment insofar as Plaintiff has failed to plead such claims with sufficient particularity as required by Federal Rule of Civil Procedure 9(b).

11.      Plaintiff's claims against AstraZeneca are barred as a matter of law pursuant to relevant provisions of the Restatement (Second) of Torts, including, but not limited to, Section 402A, comments j and k.

12.     Plaintiff's claims against AstraZeneca are barred as a matter of law pursuant to relevant provisions of the Restatement (Third) of Torts, including, but not limited to, sections 2, 4, and 6.

13.     Plaintiff is barred from recovering any damages by virtue of the fact that there was no practical or technically feasible alternative design or formulation that would have prevented the harm alleged by the Plaintiff without substantially impairing the usefulness or intended purpose of the product.

14.     AstraZeneca states that the benefits of the product at issue outweigh the risks, if any, which may be attendant to its use.

15.     Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or repose.

16.     Plaintiff's claims against AstraZeneca are barred, in whole or in part, by laches, waiver and/or estoppel.

17.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate alleged damages.

18.     Plaintiff assumed the risks, if any, inherent in the use of SEROQUEL®.

19.     Plaintiff's alleged injuries and damages, if any, were the result of an idiosyncratic reaction which AstraZeneca could not reasonably foresee.

20.     Plaintiff's injuries, if any, were caused or enhanced by a preexisting medical, genetic, and/or environmental condition of Plaintiff unrelated to any products manufactured by AstraZeneca.

21.    If Plaintiff sustained the injuries or incurred the expenses alleged, the same may have been caused, in whole or in part, by operation of nature or act of God, or other unavoidable circumstances that could not have been prevented by any person, including AstraZeneca.

22.    Plaintiff's alleged injuries, if related to Plaintiff's use of SEROQUEL®, were caused by an unforeseeable material and substantial alteration, change, improper handling, or misuse of the product after it left the control of AstraZeneca.

23.    Plaintiff's Complaint fails to state a claim upon which relief can be granted as to costs, attorneys' fees, expert fees, expenses, pre-judgment interest, post-judgment interest, refund, rescission, unjust enrichment, disgorgement, or restitution.

24.    Upon information and belief, each item of economic loss alleged in the Complaint was, or with reasonable certainty will be, replaced or indemnified in whole or in part from collateral sources.

25.    Plaintiff did not detrimentally rely on any labeling, warnings, or information concerning SEROQUEL®.

26.    Plaintiff's recovery is barred and/or should be reduced under the applicable law because of Plaintiff's contributory negligence or fault and/or comparative negligence or fault.

27.    To the extent Plaintiff's claims were caused by the actions, omissions or products of persons or entities, over whom AstraZeneca has no dominion, authority or control (including but not limited to the prescribing physicians and/or other health care providers), AstraZeneca is entitled to have its liability to the Plaintiff, if any, reduced as a result of the negligence or fault of said persons or entities, pursuant to governing law.

28.    The injuries and damages claimed by Plaintiff, if any, resulted from an intervening or superseding cause and/or causes, and any act or omission on the part of

AstraZeneca was not the proximate and/or competent producing cause of such alleged injuries and damages.

29.    AstraZeneca is unaware at this time of any settlements by any alleged joint tortfeasor.  In the event any settlement is or has been made by any alleged joint tortfeasor, however, then AstraZeneca is entitled to a full credit, offset, pro rata reduction, or percentage reduction, based on the percentage of fault attributable to each settling party, person, or other entity herein, and AstraZeneca makes known to the other parties and to the court that it will avail itself of its rights under applicable state law.

30.    Plaintiff's claims purportedly asserted under statutes and regulations relating to prescription drugs fail, in whole or in part, because these statutes and regulations do not contain or create any private cause of action.

31.    The New Drug Application for SEROQUEL® was approved by the United States Food and Drug Administration under the applicable statute, 21 U.S.C. § 301 *et seq.*, and regulations promulgated thereunder.  Compliance with such statutes and regulations by AstraZeneca demonstrates that SEROQUEL® was safe and effective and not unreasonably dangerous and, further, preempts and bars Plaintiff's claims against AstraZeneca.  Compliance with such regulations also demonstrates that due care was exercised with respect to the design, manufacture, testing, marketing and sale of this prescription drug, and that it was neither defective nor unreasonably dangerous.

32.    Plaintiff's claims are preempted, in whole or in part, by federal law pursuant to the Supremacy Clause of the United States Constitution because of the pervasive federal regulation of prescription drug manufacturing, testing, marketing, and labeling.

33.     All labeling for SEROQUEL® has been approved by the United States Food and Drug Administration under the applicable statute, 21 U.S.C. § 201 *et seq.*, and regulations promulgated thereunder.  As the agency charged with implementing the Food, Drug, and Cosmetic Act, the FDA affirmatively has stated that "under existing preemption principles, FDA approval of labeling . . . preempts conflicting or contrary State law."  71 Fed. Reg. at 3,934. Moreover, the FDA has stated, "Given the comprehensiveness of FDA regulation of . . . labeling under the act, additional requirements for the disclosure of risk information are not necessarily more protective of patients.  Instead, they can erode and disrupt the careful and truthful representations of benefits and risks that prescribers need to make appropriate judgments about drug use.  Exaggeration of risk could discourage appropriate use of a beneficial drug."  *Id.* at 3,935.  Plaintiff's claims based on the labeling for SEROQUEL® are therefore preempted by federal law pursuant to the Supremacy Clause of the United States Constitution because of the pervasive federal regulation of prescription drug manufacturing, testing, marketing, and labeling.

34.     Plaintiff's claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction, in that the FDA is charged under law with determining the content of warnings and labeling for prescription drugs.

35.     Plaintiff cannot state a claim with regard to warnings and labeling for prescription drugs because the remedy sought by Plaintiff is subject to the exclusive regulation of the FDA.

36.     This Court should abstain from adjudicating Plaintiff's claims relating to warnings and labeling in deference to the interpretation of regulations relating to prescription drug labeling by the FDA.

37.     Any claims by Plaintiff relating to alleged communications with regulatory agencies of the United States government are barred in whole or in part by operation of applicable law, including First Amendment rights to petition the government.

38.     Plaintiff's claims are barred in whole or in part because the commercial speech relating to SEROQUEL® was not false or misleading and is protected under the First Amendment to the United States Constitution and the applicable state constitution.

39.     To the extent Plaintiff is seeking recovery for benefits entitled to be received or actually received from any other source for injuries alleged in the Complaint, such benefits are not recoverable in this action.

40.     This Court is not the proper forum and is not a convenient forum for the adjudication of Plaintiff's claims.

41.     Plaintiff's Complaint fails to state a claim against AstraZeneca upon which relief can be granted for punitive or exemplary damages.

42.     Plaintiff's claim for punitive or exemplary damages is barred under the applicable state and federal law, including *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003).  Permitting recovery of punitive or exemplary damages in this action would contravene AstraZeneca's rights as reserved by the Fifth, Seventh, Eighth, and Fourteenth Amendments to the United States Constitution and other provisions of the United States Constitution and the applicable state constitutions.

43.     Unless AstraZeneca's liability for punitive damages and the appropriate amount of punitive damages are each required to be established by clear and convincing evidence, any awards of punitive damages would violate AstraZeneca's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the applicable state

constitutions, and also would be improper under the applicable state common law and public policies.

44.     Plaintiff's claim for punitive damages against AstraZeneca cannot be maintained, because an award of punitive damages would be void for vagueness, both facially and as applied. Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of a predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose; a risk that punitive damages will be imposed retrospectively based on conduct that was not deemed punishable at the time the conduct occurred; and it would permit and encourage arbitrary and discriminatory enforcement, all in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, the applicable state constitutions, and the applicable state common law and public policies.

45.     Plaintiff's claim for punitive damages against AstraZeneca cannot be maintained because any award of punitive damages would be by a jury that: (1) is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award; (2) is not adequately instructed on the limits on punitive damages imposed by the applicable principles of deterrence and punishment; (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate status of AstraZeneca; (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes

punitive damages permissible; and (5) is not subject to adequate trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of objective standards. Any such verdict would violate AstraZeneca's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the applicable state constitutions, and also would be improper under the applicable state common law and public policies.

46.     Plaintiff's claims are barred, in whole or in part, to the extent that they purport to impose liability upon AstraZeneca for any conduct in which it engaged in the exercise of its rights under federal law, including, without limitation, the Constitution of the United States and the First Amendment thereto.

47.     To the extent that the applicable state law permits punishment to be measured by the net worth or financial status of AstraZeneca and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious and fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth Amendment to the United States Constitution, the Commerce Clause of the United States Constitution, and the applicable state constitutions.

48.     With respect to Plaintiff's demand for punitive or exemplary damages, AstraZeneca specifically incorporates by reference any and all standards or limitations regarding the determination or enforceability of punitive or exemplary damages awards under federal law and the applicable state law.

49.     No act or omission of AstraZeneca was willful, unconscionable, oppressive, fraudulent, wanton, malicious, reckless, intentional, or with actual malice, with reckless disregard for the safety of Plaintiff or with conscious disregard and indifference to the rights, safety and welfare of Plaintiff, and therefore Plaintiff's Complaint fails to state a claim upon which relief can be granted for punitive or exemplary damages.

50.     Plaintiff is not entitled to punitive or exemplary damages because SEROQUEL® and its labeling were subject to and received pre-market approval by the FDA under 52 Stat. 1040, 21 U.S.C. § 301.

51.     Imposition of punitive or exemplary damages violates the Sixth Amendment of the United States Constitution because AstraZeneca is not informed of the nature and cause of the accusation against it; thus, the allegations are void for vagueness.

52.     AstraZeneca has not knowingly or intentionally waived any affirmative defenses and asserts all defenses available under applicable law.  AstraZeneca reserves the right to modify, clarify, amend, or supplement these separate or affirmative defenses as discovery proceeds in this case.

53.     AstraZeneca denies each and every allegation in Plaintiff's complaint not specifically admitted in this answer.

## JURY DEMAND

54.     AstraZeneca hereby demands a trial by jury.

## PRAYER

55.     WHEREFORE, PREMISES CONSIDERED, Defendant AstraZeneca prays that Plaintiff takes nothing by Plaintiff's Original Complaint, and that AstraZeneca be awarded its costs of court herein expended, and that AstraZeneca have such other and further relief, both general and special, at law and in equity, to which it may show itself justly entitled.

Dated:  January 15, 2009.

Respectfully Submitted,

SIDLEY AUSTIN LLP

s/ Michael W. Davis
Michael W. Davis
Sherry Knutson
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036
E-mail:          mdavis@sidley.com
                      sknutson@sidley.com

Fred T. Magaziner
Shane T. Prince
DECHERT LLP
2929 Arch Street
Philadelphia, PA
Telephone:  (215) 994-4000
Facsimile:  (215) 994-2222
E-mail:          fred.magaziner@dechert.com
                      shane.prince@dechert.com

Attorneys for Defendants
AstraZeneca Pharmaceuticals LP

**Certificate of Service**

I herby certify that on the 15th of January, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that a copy of the foregoing and Notice of ECF Filing has been sent via regular mail to:

>   Christopher Kirchmer
>   Provost & Umphrey Law Firm, L.L.P.
>   One Riverfront Place #605
>   North Little Rock, Arkansas 72114

>   s/ Michael W. Davis
>   Michael W. Davis

## SERVICE LIST

### IN RE: SEROQUEL PRODUCTS LIABILITY LITIGATION
### MDL DOCKET NO. 1769

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>***Plaintiffs' Lead Counsel*** | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>***Plaintiffs' Lead Counsel*** |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL  32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>***Plaintiffs' Liaison Counsel*** | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | E. Ashley Cranford<br>Whatley Drake & Callas<br>2001 Park Place North, Suite 1000<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>ACranford@wdklaw.com |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants AstraZeneca***<br>***Pharmaceuticals, LP, and AstraZeneca LP*** | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>***Pro Se*** | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>***Pro Se*** |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>***Pro Se*** | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>***Pro Se*** |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion, Esq.<br>Steven M. Selna, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>steven.selna@dbr.com<br>***Attorneys for Defendants Janssen***<br>***Pharmaceutical Products and Johnson &***<br>***Johnson Co.*** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP***<br>***and AstraZeneca Pharmaceuticals, LP*** |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton, Esq.<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews, Esq.<br>Lizy Santiago, Esq.<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone:  (601) 355-2022<br>betsy@law-inc.com |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |

| | |
|---|---|
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA  22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX  77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA  19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX  77006<br>Telephone:  (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net |

| | |
|---|---|
| Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com | James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |

CH1 4483202v.1